IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| **STEPHANIE BRYAN**, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> **SEDGWICK, LLP** ) <br> Serve Registered Agent: ) <br>     C T Corporation System ) <br>     120 South Central Avenue ) <br>     Clayton, Missouri 63105 ) <br> ) <br> ) <br> Defendant. ) | Case No.: <br><br><br> **JURY TRIAL DEMANDED** |

## COMPLAINT

COMES NOW Plaintiff, Stephanie Bryan, by and through undersigned counsel, and hereby states and alleges as follows for her cause of action against Defendants Sedgwick, LLP:

### PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Stephanie Bryan is a Kansas resident who, at all relevant times, resided in Olathe, Kansas.

2. Defendant Sedgwick LLP ("Sedgwick") is, and at all relevant times was, a law firm organized as a limited liability partnership operating and conducting business in the State of Missouri from its offices located at 2301 McGee Street, Suite 500, Kansas City, Missouri 64108.

3. At all relevant times, Sedgwick was Plaintiff's "employer" as defined in 29 U.S.C. § 1002(5).

4. At all relevant times, Sedgwick was a "person" as defined in 29 U.S.C. § 1002(9), and to which 29 U.S.C. § 1140 applies.

5. Plaintiff was also a "participant," "beneficiary," "fiduciary" and/or "person" to whom 29 U.S.C. §§ 1132 and 1140 apply, and as such terms are defined in 29 U.S.C. § 1002.

6. At all times relevant herein, each of Sedgwick's owners, officers, agents, and employees, were agents, servants, and employees of Defendant, and were at all times relevant herein, acting within the course and scope of their employment.

7. This Court has personal jurisdiction over Defendant Sedgwick in that at all relevant times, Defendant Sedgwick transacted business in the State of Missouri and committed the acts and omissions alleged herein in the State of Missouri within this District, and otherwise has a continuous and systematic presence in this District.

8. This Court has original jurisdiction over the federal claim alleged herein pursuant to 28 U.S.C. § 1331.

9. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

**FACTUAL ALLEGATIONS**

10. Plaintiff began working for Sedgwick, LLP as a Firmwide Benefits Manager, within the Human Resources Department, on June 1, 2014.

11. David Sanders, the Chief Human Resources Officer for Sedgwick, was Plaintiff's supervisor until his employment ended in January of 2016.

12. In or around December 2014, Plaintiff became aware that Sedgwick was in violation of its plan document with regard to its "Staff Partner Plan," a 401(k) retirement benefit plan governed by the Employee Retirement Income Security Act ("ERISA").

13. Specifically, Plaintiff learned that the plan document governing the Staff Partner Plan required that 401(k) contributions be made with regard to all compensation paid to Sedgwick's partners, with no exclusions. However, Plaintiff noticed that since 1994, Sedgwick's quarterly distribution payments to partners had been excluded from 401(k) contributions, in violation of the Staff Partner Plan's plan document.

14. Plaintiff, a reasonably prudent person, believed Sedgwick's violation of its Staff Partner Plan's plan document constituted a violation of ERISA laws.

15. Plaintiff immediately notified her supervisor, David Sanders, of her concerns of an ERISA violation with regard to the Staff Partner Plan and sought Sanders' opinion and guidance.

16. Sanders essentially brushed off Plaintiff's concerns and advised her to table further discussions until approximately April 2015 when the next quarterly distribution payments were scheduled.

17. In April 2015, Sanders issued Plaintiff a very positive performance review, coupled with a 2% raise and a $5,000.00 bonus.

18. At the time of Plaintiff's successful April 2015 review, Sanders told Plaintiff that she is "valuable to the firm" and the "kind of employee we want to keep and invest in."

19. In late spring or early summer 2015, Sedgwick engaged an audit team from Baker Tilly Virchow Krause, LLP ("Baker Tilly") to serve as independent accountants of Sedgwick LLP, and to review various financial data of the firm, including but not limited to employee benefit plans.

20. Thereafter, the Baker Tilly audit team inquired of Plaintiff whether she is aware of any potential plan violations related to Sedgwick's ERISA-governed employee benefit plans.

21. Plaintiff, in her capacity as a fiduciary overseeing Sedgwick's employee benefit plans, duly notified the Baker Tilly audit team of the potential ERISA violation of which she was aware, with regard to the Staff Partner Plan document.

22. The audit team of Baker Tilly later contacted Plaintiff to inquire as to why Sedgwick had not corrected the Staff Partner Plan violation that has been ongoing since 1994. Plaintiff responded that she would have to seek information from her supervisor in that regard.

23. Baker Tilly scheduled a follow-up call on the afternoon of September 10, 2015, to further discuss why Sedgwick had failed to correct the Staff Partner Plan violation.

24. Plaintiff then contacted her supervisor, David Sanders, to relay the inquiry from the Baker Tilly audit team, and to gather information from him for Sedgwick's response.

25. On or about the morning of September 10, 2015, Plaintiff had a one-on-one meeting with David Sanders to discuss how she should respond to Baker Tilly's inquiry concerning the ERISA plan violation.

26. Sanders then asked Plaintiff who informed Baker Tilly about the Staff Partner Plan violation.

27. Plaintiff responded that she had informed Baker Tilly of the Staff Partner Plan violation because she was obligated, as a fiduciary, to disclose any ERISA employee benefit plan violations of which she is aware.

28. Sanders firmly told Plaintiff she "never should have told" Baker Tilly about the Staff Partner Plan violation.

29. Plaintiff responded that as a fiduciary, she is obligated to report any employee benefit plan violations of which she is aware.

30. Plaintiff further reminded Sanders that Fidelity has previously advised Sedgwick to voluntarily disclose any potential employee benefit plan violations and hire legal counsel to represent the firm with regard to ERISA matters.

31. Sanders asked Plaintiff if Baker Tilly had put her discussion with them in writing. Plaintiff responded that the discussion took place over the telephone. Sanders then told Plaintiff, "Then we don't have to respond. As a Chair of the firm, I am comfortable with this response."

32. On or about the afternoon of September 10, 2015, Plaintiff participated in a phone call with auditors from Baker Tilly and gave information regarding Sedgwick's ERISA plan violations in response to Baker Tilly's inquiry about such violations.

33. On or about September 14, 2015, Plaintiff presented Sanders with a memorandum regarding her research and recommendation concerning hiring ERISA counsel to review Sedgwick's employee benefit plans.

34. At that time, Sedgwick and Sanders failed to follow through to hire ERISA counsel as Plaintiff recommended and as Fidelity had previously advised Sedgwick do.

35. Shortly after Plaintiff informed Sanders she had informed Baker Tilly of Sedgwick's Staff Partner Plan violation in response to Baker Tilly's inquiry in September 2015, Plaintiff began receiving harassing emails from Sanders containing unfair and undeserved criticism of Plaintiff.

36. Sanders then began fabricating facts and stories in an attempt to pit employees against Plaintiff.

37. Sanders also began manipulating facts to create the false impression that Plaintiff was a poor performing employee, which she was not.

5

38. On or about September 24, 2015, Plaintiff had an in-person one-on-one meeting with Sanders.

39. During the September 24 meeting, Sanders treated Plaintiff with hostility and belittled her, including calling her a "bad manager" at the outset of the meeting and then continued to unfairly attack Plaintiff's work performance.

40. Plaintiff began to cry as a result of Sanders' hostile treatment and she requested some time alone to regroup. Sanders verbally agreed, but then refused to leave the room and instead, sat two feet away from Plaintiff, staring at her and inhibiting her ability to regroup under these uncomfortable circumstances.

41. Sanders then continued to insult Plaintiff. Distressed by his behavior and unfair criticism of her, Plaintiff eventually said, again, "I can't leave the room like this, can you please give me some time?" Sanders responded, "No, you can't leave like this. Of course I will." But yet again, Sanders did not leave the room and instead sat two feet away from Plaintiff and stared at her, making her very uncomfortable.

42. After Plaintiff provided information to Baker Tilly about the Staff Partner Plan violation in response to Baker Tilly's inquiry about ERISA plan violations, Sanders generally bullied Plaintiff and subjected her to a hostile work environment. Sanders has deliberately placed Plaintiff in situations in which he does not provide her with pertinent facts related to a task or project so that he can then criticize her performance.

43. On or about October 20, 2015, approximately one month after Plaintiff notified Baker Tilly of Sedgwick's Staff Partner Plan violation, Sanders issued Plaintiff a written performance warning.

6

44. Sanders' October 20, 2015 written performance warning admonished Plaintiff for "some fundamental and striking examples of a lack of judgment and commitment to the responsibilities of your position and accuracy of information that you have provided."

45. The written performance warning contained falsehoods and inaccuracies intended to falsely portray Plaintiff as a poor performer.

46. As part of the written performance warning, Sanders reorganized Plaintiff's job responsibilities and shifted some of her more significant responsibilities to her co-worker, the Benefits Coordinator, while assigning Plaintiff more clerical tasks such as bill paying.

47. On or about October 30, 2015, Plaintiff submitted a written rebuttal to the written performance warning Sanders issued her.

48. On or about November 4, 2015, Sanders provided Plaintiff with a reply to her rebuttal in which he continued to state falsities and critique Plaintiff's performance using vague generalities rather than specific facts.

49. Sanders discriminated against Plaintiff in retaliation for her complaints of Sedgwick's Staff Partner Plan ERISA violation.

50. After receipt of Sanders' unwarranted written discipline, Plaintiff approached Sedgwick's Ethics Counsel to discuss her concerns about Sedgwick's Staff Partner Plan violation and Sanders' conduct in response and to inquire about the Sedgwick's response.

51. Sedgwick's Ethics Counsel then informed Sedgwick's General Counsel of Plaintiff's inquiry, concerns, and complaints.

52. Sedgwick's General Counsel then immediately hired outside legal counsel to provide advice and counsel regarding ERISA matters.

53. With the assistance of outside legal counsel, Sedgwick then amended its Staff Partner Plan document to the effect that, moving forward, 401(k) contributions would not be required in connection with quarterly distribution payments.

54. Once Sanders learned that Sedgwick's General Counsel was aware of Plaintiff's concerns about the Staff Partner Plan violation and Sanders' conduct in response, Sanders suddenly began to act cordially toward Plaintiff.

55. At the time Sanders concluded his employment with Sedgwick in early January 2016 he stated to Plaintiff, in the presence of her manager, that Plaintiff was doing a good job.

56. Thereafter, Plaintiff received a new manager, Holly Tamisea. Ms. Tamisea had previously worked directly with Sedgwick's General Counsel office, and worked in such capacity at the time Plaintiff made complaints relating to the Staff Partner Plan violation.

57. Immediately after Ms. Tamisea became Plaintiff's supervisor, she began to take work away from Plaintiff, treat Plaintiff with hostility and became very critical of Plaintiff's performance.

58. Ms. Tamisea terminated Plaintiff's employment on March 17, 2016. One of the reasons told to Plaintiff was that she had "lost credibility with the executive committee". Based on information and belief, the true reason for Plaintiff's termination was her reporting of the Staff Partner Plan/ERISA violations.

## COUNT I
### ERISA Retaliation in Violation of 29 U.S.C. § 1140

59. For Count I of Plaintiff's Complaint against Defendant, Plaintiff incorporates by reference all of the allegations in the preceding paragraphs as though fully set forth herein.

60. Plaintiff, a reasonably prudent person, reasonably believed and concluded as early as approximately December 2014 that Sedgwick was and had been acting in violation of the plan

document governing its Staff Partner Plan, an ERISA-governed employee 401(k)/retirement benefit plan.

62. Plaintiff informed and made inquiry to Sedgwick regarding her concerns of a plan violation with regard to the Staff Partner Plan, which Plaintiff reasonably believed to constitute ERISA violation.

62. As early as approximately December 2014, Plaintiff internally informed and inquired of her supervisor, David Sanders, Sedgwick's Chief Human Resources Officer, concerning a violation of Sedgwick's Staff Partner Plan document.

63. During approximately summer 2015 and in September 2015, Plaintiff provided information to Sedgwick's external audit team, Baker Tilly, regarding Sedgwick's ERISA plan violation with regard to its Staff Partner Plan, in response to Baker Tilly's inquiry about such violations.

64. Sanders, clearly upset by Plaintiff's communications with Baker Tilly, told Plaintiff she "should not have told" Baker Tilly about the ERISA plan violation in response to its inquiry.

65. Very soon thereafter, Sedgwick and Sanders began taking adverse actions against Plaintiff in ways including but not limited to: discriminating against Plaintiff by treating her unfairly and with hostility as compared to similarly situated employees who did not express concerns of ERISA violations, by belittling her and subjecting her to various forms of bullying, and otherwise subjecting her to a hostile work environment after she engaged in protected activity by expressing concerns of ERISA violations internally and externally; and imposing unfair discipline on Plaintiff in the form of unmerited criticism of her job performance and a formal written performance warning.

9

66. Plaintiff was terminated on March 17, 2016, following her concerns of ERISA violations internally and externally.

67. Defendant's discriminatory and retaliatory behavior toward Plaintiff was intended to retaliate against Plaintiff for engaging in protected activity and communicating and complaining internally and externally of Sedgwick's ERISA plan violation.

68. Plaintiff's internal and external communications about Sedgwick's ERISA plan violation motivated Defendant's discriminatory and retaliatory behavior toward Plaintiff, because such conduct began to occur shortly after Sedgwick and Sanders became aware that Plaintiff had complained of ERISA violations to the audit team of Baker Tilly.

69. Prior to the discriminatory and retaliatory treatment to which Defendant subjected Plaintiff, Defendant knew of Plaintiff's complaints of ERISA violations, occurring both internally and externally.

70. Defendant unfairly disciplined and otherwise discriminated and retaliated against Plaintiff, including terminating her employment, in retaliation for complaining of Defendant's violations of ERISA.

71. As a direct and proximate result of Defendant's discriminatory and retaliatory behavior, Plaintiff has suffered damage.

72. At all times mentioned herein, before and after, the above-described perpetrators, were agents, servants and employees of Defendant Sedgwick and were at all such times acting within the course and scope of their agency and employment, and/or their actions were expressly authorized by Defendant Sedgwick and/or their actions were ratified by Defendant Sedgwick, thus making Defendant Sedgwick liable for said actions under the doctrine of *respondeat superior*.

WHEREFORE, Plaintiff demands judgment in her favor and against Defendant, on Count I of her Complaint, and prays for legal and equitable relief including but not limited to her attorneys' fees and costs, prejudgment and post-judgment interest as provided by law, and such other and further relief as this Court deems just, proper and equitable.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial on all counts of the Complaint so triable.

RESPECTFULLY SUBMITTED,

HOLMAN SCHIAVONE, LLC

By: /s/ Anne W. Schiavone
Anne Schiavone, MO Bar #49349
Kathleen M. Dunnegan, MO Bar #63992
4600 Madison Avenue, Suite 810
Kansas City, Missouri 64112
Telephone: 816.283.8738
Facsimile: 816.283.8739
Email: aschiavone@hslawllc.com
Email: kdunnegan@hslawllc.com

AND

LAUREN ALLEN, LLC

Lauren P. Allen, MO Bar #49845
420 Nichols Road, Suite 200
Kansas City, Missouri 64112
Telephone: 816.877.8120
Facsimile: 816.817.1120
W: www.laurenallenllc.com
Email: lpa@laurenallenllc.com

ATTORNEYS FOR PLAINTIFF